Okay, the next case is number 13-1665, Adjustacam, LLC v. Newegg, Inc., Mr. Edmonds. May it please the Court, I'm going to speak first as to Adjustacam's appeal on the claim construction issue. If Newegg hadn't filed an appeal of an attorney's fees issue, could you have appealed the claim construction? I don't believe so. Then why is it an appropriate appeal even if they have appealed it? Because… Doesn't an appeal, whether it's a cross appeal or not, have to have independent jurisdiction? As we see it, the cases that have been relied on have to do with voluntary dismissals. They have to do with other situations. This case… Which is what you have here, a voluntary dismissal. Well, what we have though… Ultimately, in the case, the asserted claims were canceled, so there was no case for controversy before the court as to those claims. The dispute was moot, and so it had to be dismissed. If it was moot there, how is it not moot here? Well, our point is that this is a situation that has not – we've seen no cases directly on point where one side, where there was a claim construction, then the party that prevailed on that claim construction has now appealed the district court's determination alleging that our infringement positions were meritless both before and after the claim construction. And based on that, we look to general principles of whether there's a case or controversy, whether this is moot, and what we see is the cases have… But you can argue about whether the district court was right in the claim construction for purposes of denying or granting attorney's fees without appealing. Well, I think that it – but for the cross-appeal, first of all, our position is that, as the district court found, that it's consistent with its claim construction. But our position is that if the court reversed the claim construction, then their 285 arguments would fall away. But your position is not what's at issue. The issue is you don't have a case or controversy to appeal. And I understand the court's comments on that. I understand even how you're standing up there, to be perfectly honest with you. If I understand it, you filed a new unopposed motion to dismiss your claims with prejudice and Newegg's counterclaims without prejudice, which was granted, right? Correct. That's the end of your case. You may think you want to participate in their case, which is another question, but you don't have a case. How do you think you have a case? What I think – How can you have a case if you dismissed it? What we say to the court – What would the change in judgment be, even if we agreed on the claim construction? There's no judgment for us to change. Newegg filed their notice of appeal first. They appealed the judgment on the theory that – It doesn't matter whether they filed first or you filed first or who filed first. You can only cross-appeal if you have a live case or controversy. Well, your Honor, I understand – If you already conceded without their appeal, you wouldn't be here. I have conceded, and I want to be up front with the court. Our position, as we've articulated, is that this situation is one that the court has not been faced before, where you have a then-appealing and adverse 285 ruling based upon the allegation that our infringement position was meritless, which we believe creates a case or – has an enduring case or controversy as to whether our infringement position was meritless. Which you can argue in the attorney fees case. You can't argue that you have a case. Well, your Honor, I – You should be over there. You shouldn't be over here. I understand the court's comments. Our view is – It's not just comments. I mean, it's very close to filing a frivolous appeal to get another brief. I mean, it's very distressing to me that you filed an appeal for a case that you dismissed as moot. Well, that was not our intention to get another brief. What I'd say is, though, in the absence of a case directly on point, we have a 285 that we felt we had a duty to raise the issue with the court. You had to recognize that you don't have a case when you started down this road. Didn't you recognize that? What we recognized is that there are cases that we cited that talk about if there is a dispute between the parties, if there's a case or controversy. What I would prefer to do – because I hear the court loud and clear. What I'd prefer to do is focus on the other issues, which we'd like to have the court hear. If you're defending against the appeal on attorney's fees, then I think it would be appropriate for the other side to proceed first. We have – we would – And you can respond as appropriate. We defer that, Your Honor. Thank you. Okay. Mr. Frankel. May it please the Court. The Supreme Court in Octane Fitness told this court and district courts that courts may shift fees in cases that stand out from the rest. And the purpose behind Section 285 is to deter cases that should not have been brought in the first place and to protect defendants from having to pay to defend against such cases. Who makes that decision, counsel? Well, the district court does in the first instance, Your Honor. Very broad discretion. It's abusive discretion standard, Your Honor. But in Highmark, the Supreme Court said that it's necessarily abusive discretion where the district court premises its case based on clearly erroneous facts or clearly erroneous law. And that's what happened here, and that's why we think the district court should be reversed. And we'll get into those – I'll go right into the district court's use of discretion. That's right, Your Honor. Why doesn't this just need to go back for a proper review under Octane and Highmark? Well, there are two reasons, Your Honor, why we think that this court is – You want us to make the exceptional circumstances factual finding in the first instance. Right. And there are two reasons why. I think, first of all, this is a very easy to understand patent and accused product. But we don't do that. I mean, it seems you're asking for an awful lot. You're going to – I don't understand why you're not just asking us to send this back and ask the district court to look at this under the right standard. Well, we did say in our brief, Your Honor, that at a minimum this court should remand under Octane Fitness. But we think that that's just going to bring the case back to this court on the same record. Well, how do we know until the district court looks at it and makes the proper factual finding? Well, the other issue that's happened here, Your Honor, within the last couple of weeks is the district court has announced its retirement three weeks from today. And so we're going to remand it to a court that's going to look at it. I mean, at the end of the year. Is that right? No, I think it's – Before we're remanded. I'm sorry, what, Your Honor? And they announced its retirement as of the end of 2015. I don't think any sooner. Did I misread it? I thought it was as of the end of April, Your Honor. All right. You may be right. But even if that's the case, it doesn't matter. There's still going to be a district court judge to remand this to who can be the fact finder. We're not fact finders. Indeed, counsel, wouldn't you – let's be candid for a minute. Wouldn't you be better off if Leonard Davis had left? Because it's clear he's not going to give you a penny under any standard. He didn't like the way the case got litigated. Let's talk real life. He didn't like the way you litigated your case, and he isn't going to give you a penny. Now, it doesn't matter whether we send it back for Octane Fitness or we send it back for anything else. You're not going to get money from Leonard Davis as long as he's sitting there. So what do you want us to do? We're not going to give you the money. That's for clear. Your Honor, this court can still review the lower court's opinion for the clear errors that we pointed out. Now, in terms of the ultimate opinion, maybe this court is right that maybe the district court has to do the winning. Even if we find clear error, we're just going to send it back. We're not going to make a new factual finding. So why would we go to the problem of making a clear error determination when it really just needs a new factual determination? Well, I mean, and that's what the court just did in the BIAX v. NVIDIA case last week, was it decided that there was a clear error in the district court, and rather than sending it back for reweighing, it just reversed the finding. We think that that can happen here, under the record here. I mean, I'd like to go into the clear error here. The district court on page A6 of the record, talking about the infringement case, premised its opinion on, quote, it says, the assumption that, quote, the ball and socket joint of the Newegg product truly restricts the range of movement such that it cannot rotate about multiple axes. And that just ignored the facts in the record. Newegg had shown that not only its own experts showed that its camera could rotate about multiple axes, but it quoted a Justicam's expert who also admitted, and this is on page A284.143 and A284.165 of the record, that the Newegg camera could rotate freely about two axes and in a limited motion in a third axis. So, I mean, right there, based on that, if this court sends back under octane fitness, we're sending it back with the district court already having premised its opinion on a clearly erroneous finding, a fact that's contradicted by the record. Beyond that, we think that we showed evidence in the record that a Justicam used a pattern and practice of seeking nuisance value fees well under the cost of litigation, which the district court waved away, holding on page A7 of the record that this was a, quote, settlement-driven case. A settlement-driven case that the district court held was appropriately low value in terms of the settlement amounts due to the cost of goods. But whether a case is meritless should not depend on whether the sales prices of the product at issue are high or low. What is it you want us to do, counsel? Well, we think that based on this record, this court could reverse and find the case exceptional as one that stands out from the rest. Okay. The court in E.I. Nett, of course, it was a different procedural posture. The court there had found under Section 285 it to be an exceptional case, and this court affirmed. But we really, Newegg has a hard time distinguishing between the facts of E.I. Nett and the facts of this case. They're both cases involved frivolous assertions on the merits of infringement and validity, and combined with nuisance value fees that were set to- Why do you think the district court exercised discretion not to give you the attorney's fees? Well, we think the district court just didn't look at, very carefully look at the facts in the record. And this is evident. For example, we put in- He wasn't familiar with the record. He may not have spent the time necessary to get familiar with the record. If you recall, Adjusticam didn't let the district court see the merits of the claim construction because Adjusticam abandoned his case, giving Newegg a superset covenant not to sue. Newegg couldn't prevail on the merits on invalidity or non-infringement, which we think Newegg would have done. And so all of that evidence had to be put in on the attorney's fees motion. And even though Adjusticam, as is mentioned, canceled the claims not before dismissing Newegg, but rather after dismissing Newegg. But the reason why Adjusticam canceled the claims was because the claims were invalid in light of a reference that was very similar to the patent. The district court said none of this and said that in a single line, that Newegg failed to prove that Adjusticam's validity case was baseless. We think that this court can look at that and see an abuse of discretion here rather than send it back and have it come back up to this court and probably it was going to be the same record. If you would indulge me, Your Honors, I'd like to just point out that on page A1282 and A1283 of the record, Newegg showed that what Adjusticam was really doing was coming up with low-value, rounded lump-sum numbers, again, to dissuade defendants from litigating the case. They tried to justify those licenses as being at $1.25 to $1.50, but the range of actual rates as calculated by Newegg's expert was from a dime to $160. And that's exactly what the fact pattern in E.N. that was. You're not arguing that the payment that they were asking of Newegg was out of line with what they've been settling with others for. Your position, as I understand it, is that there was a point at which they should not have pursued your client and that they went well beyond that point. Right. Well, Your Honor, we think that in this case, obviously we think this case shouldn't have been brought in the first place. But beyond that, at the very beginning of the case, Newegg disclosed its damages figures to Adjusticam and showed that it had $100,000 in sales total of the accused product. And the initial demand was $75,000. Again, you can't litigate a case for $75,000. That's far below the cost of litigation, but it's three-quarters of Newegg's revenue from the accused product. The settlement demands, until the very end, were completely out of line with revenue. And even the figures that counsel pointed to in the brief at the very end were still way out of line with the remaining revenue that was at stake. Adjusticam saw from the very beginning of this case that if they went to trial, they weren't going to recover more than $10,000, $20,000 at the most. Yet they persisted in litigating this case against Newegg. And after Newegg prevailed in claims instruction, at that point, the district court, the magistrate judge, as affirmed by the district court, said that the patent clearly shows a camera rotating relative to a hinged member around a single axis of rotation. Just as if I'm turning my head now to look at the panel, it's one axis of rotation. Newegg's camera could rotate in multiple axis of rotation. After that claims instruction, Adjusticam should have done what your Honor has just suggested. They should have dismissed this case and appealed the claims instruction issued to this court. It didn't do that. It perpetuated the case, finding an expert who ignored the record and said that, well, when you're rotating it one way, you're not rotating it the other way. And then when you're turning it, and vice versa. And based on that, it's really functionally the same as a single axis of rotation. Of course, as soon as he was deposed, it all went out the window. And he admitted that the Newegg camera could rotate freely in multiple axis of rotation. That's the sort of evidence that Newegg put forth that the district court ignored. At that stage, did they know that yours was a ball-and-socket mounting? Yes, Your Honor. First of all, that was very clear from the very beginning. I think it was shown on pages 9 and 10 of our brief, or maybe it's page 12 of our brief. The Newegg accused products, you could just see them, that they're mounted with a ball-and-socket. Anyone can order a Newegg camera and pre-filing, which of course is their duty to do, and investigate it. And there's nothing hidden about that, the ball-and-socket joint. It was very clear. If there are no other questions, Your Honor, I'll save the rest of my time for my rebuttal. Okay. Thank you, Mr. Frankel. Mr. Edmonds, I think a rebuttal on this appeal is appropriate. Yes, Your Honor. The starting point for the court to review are the factual findings by the district court. Those are reviewed for clear error. No clear error has been shown. No abuse of discretion has been shown. The Octane case that has been cited has made it clear to this court that it needs to show substantial deference to district courts and to the factual findings of those district courts. The district court that presided over this case had the best knowledge of its claim construction, the implications of that claim construction, and Newegg had a full and fair chance to litigate these issues before the district court. But it wasn't applying the proper standard. The district court wasn't. I mean, the district court was applying our standard, which the Supreme Court reversed. So at a minimum, doesn't this case have to go back for redetermination under the proper standard? I appreciate that this case may be remanded. I think that I've seen other cases that have fallen in this Octane gap that have been remanded. I guess our position is that Newegg is the one who's appealed this. They took the position in their opening brief that this just needs to be reversed. They didn't request a remand. Fair enough. In their reply brief, when we pointed out they'd not requested a remand, they came back and said, well, maybe you should remand it. But our view would be that they didn't request a remand in their opening brief and that they should be stuck with the standard that it was applied under. If this court sees that differently, then you would need to remand it. Our view is also that, based on this factual record, that you could affirm it without remand. So as I understand your position to put a harsh spin on it, if a plaintiff partway through the case observes that things are going against him, clearly going against him, but the case has proceeded a certain way, and the deposition experts and so on, there have been expenditures in defense. But if the plaintiff decides to withdraw at that stage, to agree to withdraw with prejudice, that satisfies the other side who really can't insist that you go forward, there never would be attorney's fees because there's been no judgment by the court that you might lose or would lose, or that the person who withdraws has experienced setbacks. Oh, no, we're not taking that position. That's what you're doing, but that's not your argument. That's not our argument, no, because they had every opportunity to show their position to the district court. As counsel spoke, these are relatively straightforward devices. Their arguments, the side's arguments were relatively straightforward. The district court found their arguments to be meritless. There was no need to have a trial on the merits. I just point out that we disagree with the characterization of how this case ended. I think the record is clear, including supported by sworn declarations, that what happened here is that New Egg, as the case went on, New Egg suppliers settled out, and New Egg's damages, as the court may recall, there's no markings. There's no pre-suit damages. We're just talking about post-suit damages. Two years into the case, the damages against New Egg were less than they were a year into the case, and they were down to basically one webcam, which was the Roseville webcam, and that's because eight or so different suppliers had settled out, and then finally HP and Creative settled out. There was simply – New Egg's problem had been resolved by its suppliers, and the plaintiff was faced with a case in which one defendant, Sakhar, was clearly riding coattails. They haven't even showed up for argument. As the court is aware, they copied New Egg's opening brief. They've been riding their coattails the entire case. Sakhar did not designate a damages expert, and we wanted to go to trial against the party that did not have a damages expert that was basically riding coattails and felt that the prudent thing to do was to dismiss against New Egg so we could focus on Sakhar for trial. That's why New Egg was dismissed, not because the case was weak. If I understood Mr. Frankel correctly, he's asking us to apply the substantive law, whether it's Brooks or whether it's Octane Fitness, and give him an award. Is it your view that we should apply the same Brooks, Octane Fitness, whichever we think is the right standard, and deny the award? You're both at least arguing that we have authority to decide this case without sending it back on a remand. Our view is that you have the authority to affirm this case without sending it back to remand because the factual findings of the district court support an affirmance under either Brooks or Octane. Our view is not that you could go back in and reweigh the facts and ignore the district court's factual findings and reverse. If you felt that the district court erred, then our view is you'd be obliged to remand it to the district court, or whether you felt they erred or whether you just felt that the district court needed to weigh it under a different standard, you'd be required to remand it. But we don't – our view is not that you could reverse the district court without remanding, no. I also want to point out Judge Newman's comment about when the case goes back. I think the record is also clear that a justicam was ready, willing, and able to take its case to trial against Sakhar. And on – all the way up to experts, to pretrial order, everything, ultimately what happened was the claims were canceled in reexamination. So after two years of reexamination, the claims were canceled, and the case was over at that point. That's a plaintiff – the only reasonable thing a plaintiff can do is dismiss the case at that point. There's nothing unreasonable there. With respect to the prior art, we say that they – the PTO misunderstood the Irrafuni reference. We respectfully disagree with the PTO's determination, but by the time it would have been appealed, the patent would have largely been exhausted. So we just simply had to accept it and take the claims that we could get. As far as their argument with Irrafuni, what I'd ask you to look at Irrafuni is if Irrafuni has a member that just slides through a hole that's not attached at all. There are no threadings in that hole. The only way to hold that in place is to screw it from the bottom and screw it from the top. And the view we took during reexamination was that it's not attached because if you clamp it down, then it's not rotatably attached. If you clamp it down, it's not rotatable. If you don't clamp it down, it's not attached because it just freely slides through. But the case still got a limited degree of freedom. The – this is with the Irrafuni reference. Yes, we're not arguing over degrees of freedom with Irrafuni. We're arguing over whether it's the attached part of the rotatably attached and whether it can be attached and rotatably attached at the same time. As the district court found, the argument was reasonable. I'd point out in the reexamination, there are originally four references. Three of them were overcome, so over two years. And the Patent Office isn't always correct, and it was reasonable in rebutting that. With respect to the infringement, counsel has – or our new egg has plucked comments from our expert out of context. The district court heard – was privy to all the evidence from the experts. And our experts' testimony – our experts' report and testimony were clear that when – because this restricted joint, it's not a ball-and-socket joint. It's a restricted ball-and-socket joint as depicted in our brief. Because it's a restricted joint, you have two functionally independent joints. And because of that, at any configuration, there's a single axis rotation at a vector from the hinge member. And that's what our expert opined. It is correct. And the district court, who was the best arbiter of its – had the best knowledge of its claim construction ruling, found that to be in accord with the claim construction ruling and found it to be reasonable. And that's why we took issue with the claim construction ruling primarily, because we believe that new egg has latched on to a word in there, limited, and ignored the rest of the claim construction ruling, which is largely just a restatement of the claim language and saying that it's plain meaning. But there has been no showing that there – that our claims – that our infringement positions were erroneous. Certainly no showing that they were clearly erroneous because the district court had ample foundation to define those to be reasonable based upon the expert – the totality of the expert testimony that was provided. With respect to the settlements, again, the conjecture about the settlements is just inaccurate. The settlements were, in this case, relatively small. They ranged from $225,000 to $15,000 because there just weren't that many webcams at issue in the case, and because there were no past damages. The settlement – the evidence is clear, unrebutted, that the settlement metric of $1.25 to $1.50 per webcam was established before the case was filed by the predecessor in interest, that there's no suggestion that adjust-a-cam was unreasonable in following that metric. And the evidence is unrebutted that adjust-a-cam, when it had settlement discussions with the defendant, that it – that was the metric that it used as its benchmark for settlement. And in fact, Newegg took issue with that we'd offered to settle for $51,000 when they had $17,000 of past damages. And as we showed, if they wanted a license throughout the pendency of the patent, it was mathematically irrefutable that we'd mathematically taken that. And they seem to take the position that, well, you've asked for too much because the settlement you've offered is – has in it a license going forward when, of course, we know any defendant that settles is going to want a license going forward. There's just simply been no showing that the district court clearly erred in any respect. And district court's findings were all appropriate because they're supported by the record, including sworn testimony by adjust-a-cam's experts, both damages and infringement, also by the sworn testimony of adjust-a-cam's 30B6 witness. And there just simply was no misconduct here. The district court's – our view is the district court's findings should be affirmed. I think we have the argument. Thank you. Mr. Frankel. Your Honors, again, we heard adjust-a-cam not dispute that the accused products could rotate around multiple axes, but rather said rotate around a single axis of rotation at a vector. Here, again, adjust-a-cam's expert admitted that the accused products could be rotated around multiple axes. Adjust-a-cam and the district court, rather, did not see that, and that's a clear error. And while this case can and perhaps should be remanded to the district court, I think the right thing to do here is to at least look at the factual errors that Newick is raising. Because the court could at least point it out because that will make the decision below a lot streamlined if the court can review those errors now. I don't think either side has said that this court can't review those findings. And one of the reasons for it is the attorney's fees play an important role. Patent litigation is very expensive, and companies that are forced to spend money to combat baseless claims are not spending money on developing new products or on their customers and employees. And just as the defendant in E.on.Net had the right to challenge that abusive patent assertion for what it was, so does Newick here because otherwise these kinds of claims would remain unchallenged. Companies like Newick shouldn't be forced to settle just because, as the district court put it, it's a settlement-driven case. And we think here the district court was so focused on the fact that there are so many other settlements that it lost track of the fact that Newick had the right to stand up to frivolous assertions. And Justicam points out that the standard review in Highmark is abusive discretion, but that doesn't mean that this court has to accept whatever the district court says, as Justicam appears to advocate. Octane Fitness and Highmark, in combination with each other, need to mean something. If this court applies Highmark in the way Justicam contends it should be applied, Octane Fitness will mean nothing. Here, Justicam's pattern and practice of arbitrary approach to licensing, not tied to revenue, and a number far below the cost of litigation, combined with unsustainable infringement and validity theories, is precisely what led this court in E.on.Net to declare that case exceptional and should be the basis for this court reversing the district court here. And the problem is, and one of the reasons why Newick is pushing attorney fees in this case, is that there are too many other cases like this one. Massive patent litigations against dozens of defendants with minimal settlement amounts demanded that are flimsy at best on the merits. And it's unfortunate that this kind of case has become the rule and not the exception. This court may not see many of those cases because, most of the time, defendants will take the $25,000 settlement number and not go through the whole process of trying to get attorney fees. But courts cannot be immune to baseless litigation just because it's so prevalent. The commonality of a wrongful act cannot be unexceptional. By reversing the district court here, or at least giving the district court guidance as to where it committed factual error and how it should apply Octane Fitness, this court will send a signal that cases like the Justicans should not be brought to begin with, or, if brought, should be voluntarily dismissed at an early stage when it's clear that there is no case and not perpetuated to increase costs on both the improperly alleged infringers and the judicial system. Thank you. Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for...